### BUNN v. CITY OF LAREDO.
### (No. 211–3309.)

(Commission of Appeals of Texas, Section B. Nov. 15, 1922. Rehearing Denied Dec. 13, 1922.)

Vendor and purchaser ⚌100—Rights of vendor in possession as holder of superior legal title not affected by 1913 limitation statute.

The rights of a vendor in possession, as holder of the superior legal title, to defend against claim of the vendee to the possession, are not affected by Rev. St. arts. 5694, 5695, as amended in 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5694, 5695), the only effect of that act, as regards the superior title, being to bar the vendor's right of action when asserted in the courts; hence the right of a city, as vendor of land, to forfeit the land for vendees' nonpayment, was not affected by the 1913 act, so that, when the city resorted to the remedy of forfeiture and repossessed itself of the land, its title and possession were unassailable by those claiming under the unfulfilled contracts of sale.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Trespass to try title by T. A. Bunn against the City of Laredo. The Court of Civil Appeals affirmed a judgment of the district court for defendant (208 S. W. 675), and plaintiff brings error. Affirmed.

T. C. Mann, of Laredo, for plaintiff in error.

A. Winslow, of Laredo, for defendant in error.

McCLENDON, P. J. This was a suit in trespass to try title in which T. A. Bunn, plaintiff below, sought to recover of the city of Laredo, defendant below, four blocks of land within the limits of said city. The cause was tried without a jury, and judgment was rendered in favor of defendant, which judgment the Court of Civil Appeals affirmed. 208 S. W. 675.

The controlling facts in the case are: The town of Laredo, of which defendant is the legal successor, was established by the crown of Spain about the year 1767, at which time the Spanish government granted to the town some 10,000 acres of land for a town site. The state of Texas subsequently extended her letters patent to defendant for all that part of this grant lying north of the Rio Grande river. The land in question is a part of this original grant, and is included within the corporate limits of the present city, and many years ago, with other parts of the grant, was platted into blocks, lots, streets, avenues, and plazas. On June 15, 1888, the city council of Laredo passed an ordinance wherein it authorized the sale of the lands included within the district in which the land in question is situated, at the price of $130 per block, the sales to be made for cash, or not less than 10 per cent. of the whole purchase price in cash, and the balance on time of not less than 10 nor more than 20 years, payable in equal annual installments with interest payable semi-annually at 8 per cent. per annum, the purchaser being given the right to pay the entire balance at any time. The purchaser was required to give his promissory note for the balance of the purchase price payable to the city, and secured by vendor's lien expressly retained therein, and providing that in case of default in principal or interest the purchaser should forfeit all right to the land, and the city secretary should indorse on the note "land forfeited," and make an entry to that effect on the account of sales kept by him, and thereupon the land should be forfeited to the city without the necessity of re-entry or judicial ascertainment, and that the land might thereafter be resold by the city in the same manner as if no sale had been made. The city secretary was required to record and keep a strict account of all sales made.

On September 14, 1889, the city authorities acting under this ordinance sold the four blocks in question to one Antonio Juarez at $130 per block, he paying $13 per block in cash and executing his four promissory notes for $117 each, payable on or before 20 years after date with interest; the notes containing the other provisions required by the ordinance, including retention of the vendor's lien. At the same time the city through its proper officers executed four deeds, conveying the four blocks in question to Juarez, the deeds reciting the execution of the notes and retention of the vendor's lien. On December 20, 1889, Juarez conveyed the land to one A. P. Luckett. No payment was ever made upon any of the notes, either principal or interest. No taxes were ever paid to the city on the property after the year 1903, whether any were previously paid is not disclosed. On December 4, 1915, the city secretary indorsed upon each of the notes and upon his account or book of sales wherein he kept accounts with the original purchasers the words "land forfeited." Between September and November, 1916, the city built a hospital on one of the blocks in question at a cost of about $2,782.52, and in addition bored a well and erected a windmill on said block at a cost of $555, and since November 2, 1916, when the hospital was completed, the city has used it for public patients suffering from contagious diseases requiring isolation. On Feruary 3, 1917, the executors under the will of A. P. Luckett, joined by others, executed a quitclaim deed by which they conveyed the land in question to T. A. Bunn, plaintiff below, for the recited consideration of $100. Neither Juarez, Luckett, Bunn, nor any one claiming under any of them was ever in possession of any of the land in controversy. The suit was filed on September 15, 1917.

The contention upon which plaintiff's assertion of title is rested is that under the limitation act of 1913 (R. S. arts. 5694, 5695, as amended in 1913 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5694, 5695]) the superior title which the city reserved in the deed and notes was barred by limitation in November, 1914, one year after the act as amended took effect; after which time all vestige of title to the property in the city was lost; and that therefore, since the city had taken no steps prior to the expiration of the one year thus allowed by statute to assert its rights, its subsequent action in attempting to forfeit the sale by the indorsement on the notes and in its record book, and its subsequent acts of possession, including the improvements placed upon one of the blocks in question, were of no avail as reinvesting the city with any title whatever to the property.

It is stated in the findings of fact of the trial court that there are about 150 blocks of land in the city of Laredo which the city claims, the title to which is in the same condition as the title to the blocks in this suit. The questions which the case presents are therefore of grave importance to the city.

The 1913 act has recently received very careful consideration by the Supreme Court in the case of Cathey v. Weaver, 242 S. W. 447. In the opinion in that case an exhaustive analysis of the act is given, and its various provisions are construed and their constitutionality passed upon. In that case the Supreme Court was construing the act as related to instruments executed after July 14, 1905; but in the course of the opinion the court holds that the effect of the act, as its language clearly implies, was to bar after the expiration of one year from the date when the amended act went into effect the right of action to recover upon the superior title, where the deed or notes retaining it were executed prior to July 14, 1905, provided, of course, the notes themselves were more than four years past due. There were a number of

grounds upon which the Court of Civil Appeals sustained the trial court's judgment, but we have reached the conclusion that none of these holdings merit consideration, except that to the effect that the 1913 Statutes do not expressly or by necessary implication destroy the superior title reserved by the city, or affect its right reserved in the ordinance to forfeit the sale for noncompliance with the payment provisions of the purchase-money notes; but that said statutes only bar the remedy of resort to the courts for the enforcement of the city's superior title.

The case of Goldfrank v. Young, 64 Tex. 432, enunciates the principles which we think control the proper solution of the question thus presented. In that case it was distinctly pointed out that limitation statutes, unless providing otherwise, relate merely to the remedy, and affect only the right to resort to the courts; that such statutes, unless so providing, do not destroy the rights of the parties as distinguished from the remedy of enforcing them in the courts; and that where the parties themselves have created their own remedy by contract, whereby their rights may be enforced independently of the courts, such remedy is not affected by the limitation statutes. Attention is there called to the fact that our limitation statutes, which relate to real estate, specifically provide that whenever any cause of action for its recovery is by such statutes barred, "the person having such peaceable and adverse possession shall be held to have full title, precluding all claims." The effect of those statutes, which require actual possession on the part of the person asserting limitation under them, is not merely to bar the right of action in the courts, but is to destroy the title of the prior owner, and vest such title in the party having such peaceable and adverse possession. We quote the following from that opinion:

"The Legislature having declared what shall be the effect of the statutory bar in 'actions or suits' relating to the title to real property, in the absence of such declaration, or of a settled construction giving to the bar of the statute a similar effect in other classes of 'actions or suits' mentioned in the statute, it is but reasonable to infer that it was not the intention of the Legislature to give the same effect to the bar in the other classes of cases.

"The statute now in force, in reference to the bar of limitation, evidences clearly the intention of the Legislature that the same rule was not intended to apply in cases in which the failure to bring suit or action within the prescribed time is the sole ground on which the defense arises, as will apply in cases in which this, coupled with adverse possession of the thing in controversy, whether realty or personalty, is made the ground on which the defense is based.

"In the one case, the facts which create the statutory bar destroy the right of the former owner, and vest title in the possessor; in the other, the law denies to the holder of the claim any remedy through the courts for its assertion or enforcement, but does not declare the debt satisfied as by payment, or otherwise so totally annulled as to be deemed to have no existence on which any right may be based.

"If it had been the intention of the Legislature utterly to annul a cause of action given by contract, such as is evidenced by the note given by the appellee to Goldfrank, Frank & Co., so that it could not, under any circumstances, constitute the basis of a right, it would have been so declared, as it is, in terms and in effect, in cases in which the recovery of specific things is sought after the statutory bar has been completed under an adverse possession.

"In the one case, the expiration of the time prescribed, attended with the requisite adverse possession, destroys the right of the former owner and vests title to the thing in the adverse possessor, while in the other, the creditor is simply denied a remedy through the courts, if his adversary asserts the statutory bar as a defense."

The provisions of the 1913 act which have bearing upon the question before us are the following portions of articles 5694 and 5695:

"Art. 5694. The right to recover any real estate by virtue of a superior title retained in any deed of conveyance heretofore or hereafter executed, or in any vendor's lien note or notes heretofore or hereafter executed, given for the purchase money of such real estate, shall be barred after the expiration of four years from the maturity of such indebtedness, and if suit is not brought for recovery of such real estate, or for the foreclosure of the lien to secure such note or notes within four years from the date of the maturity of such indebtedness, or if suit is not brought within such time for the recovery of the land by the original vendor, or his transferee, or for the foreclosure of the lien given to secure such notes, the purchase money therefor shall be conclusively presumed to have been paid in any suit to recover such land or to enforce a lien thereon, and the lien reserved in any such notes and deeds conveying the land shall cease to exist four years after the note or notes have matured. * * *

"5695. * * * Providing those owning the superior title to land retained in any deed of conveyance or his transferee and those subsequently acquiring such superior title by transfer, shall have twelve months after this act takes effect within which to bring suit for the land if their claim to the land is not otherwise invalid and unless such suit is brought within twelve months after this act takes effect, they shall be forever barred from bringing suit to recover the same. * * *

We are unable to reach the conclusion that it was the intention of the Legislature to destroy the superior title of the vendor, and vest the same in the vendee, unless such title were asserted in court prior to the expiration of the one-year period of limitation. Article 5694 provides that the *right to recover* any real estate *by virtue of the superior title*, etc., shall be barred after the expiration of four years from maturity of the in-

debtedness, and *if suit is not brought for recovery* of such real estate or foreclosure of the lien within such time the purchase money shall be conclusively presumed to have been paid *in any suit to recover such land or to enforce a lien thereon* and *the lien* reserved in such notes and deeds conveying the land *shall cease to exist* four years after the note or notes have matured. It may be conceded that the vendor's lien was by the express language of this statute destroyed when the bar of the statute was complete. But it is a significant fact that, while the act specifically refers to the superior title as distinguished from the vendor's lien, it does not attempt to affect the superior title other than to bar the owner thereof from the right to assert it in a suit to recover the land. We think it is unnecessary to attempt any review of the decisions in this state as to the nature of the superior title, which remains in the owner of real estate where sold on credit, and a vendor's lien is retained to secure the purchase money. It has been the uniform holding of our courts from the earliest times that, however absolute may be the terms of such conveyance, the contract of sale is treated as executory between the vendor and vendee and those holding under them until the purchase money is fully satisfied; and that, in addition to all other remedies to enforce payment of the purchase money, the vendor has the alternative remedy, so long as the purchase money is not paid, to rescind the contract of sale and recover the land upon the strength of his superior title as an unsatisfied vendor. This remedy to rescind and resort to the superior title has uniformly been held to be separate and distinct from and wholly independent of the remedy to subject the land to the payment of the purchase money by sale under foreclosure. The provisions of the 1913 act which bar the right of action upon the vendor's lien four years after the maturity of the purchase-money notes was, as held in Cathey v. Weaver, supra, but declaratory of the law as it theretofore existed. The vendor's lien has always been held but incident to the debt which it secured, and when that debt was barred it was also barred. When the debt by valid renewal or promise in writing to pay was revived, revival of the lien followed as a matter of law. Howard v. Windom, 86 Tex. 560, 26 S. W. 483. The 1913 acts do not purport to deal with or affect the debt, but merely the superior title, the vendor's and other liens on real estate, and the power of sale by trustee. Adams v. Harris (Tex. Civ. App.) 190 S. W. 245; Hoya v. Self (Tex. Com. App.) 245, S. W. 424. It is inconceivable that the Legislature could have failed to have in mind the clear distinction which has always been drawn by our courts between the superior title remaining in the vendor by virtue of the retained vendor's lien and the vendor's lien itself; the former

being unaffected by limitation statutes prior to the act of 1905, which only dealt with instruments executed after that date, and the latter being incident to and following the status of the purchase-money debt. Article 5694, as stated, expressly deals with both of these remedies. We would hardly be warranted therefore in concluding that if the Legislature intended to destroy the superior title remaining in the vendor, it would have omitted so to state in express language, while at the same time expressly declaring that the vendor's lien should cease when the obligation it secured became barred.

Nor do we think the language, "The purchase money therefor shall be conclusively presumed to have been paid," militates against this conclusion; for this language is immediately followed by, "in any suit to recover such land or to enforce a lien thereon." The effect of the latter quotation is to expressly limit the presumption of payment to suits to recover under the superior title or to enforce the lien.

Passing to the quoted proviso in article 5695 under which one year is given from the taking effect of the act within which to bring suit for the land under the superior title, it is a further significant fact that the only consequences of failure to bring suit within the prescribed time is that such owners "shall be forever barred from bringing suit to recover the same." The fact that the Legislature in dealing with the question of barring the vendor's lien in the preceding article provides additionally in express language that the lien shall cease upon completion of the bar, coupled with the fact that no such consequences are attached to the bar of the right to recover under the superior title either in sections 5694 or 5695, evidences a clear purpose in the legislative mind to draw a distinction between the two remedies. We think the conclusion follows that the rights of the vendor as holder of the superior title were not affected by the 1913 act, but that the only effect of that act as regards the superior title was to bar the right of action thereon when asserted in the courts. We think, therefore, that the trial court and Court of Civil Appeals correctly held that the city's right to forfeit the land in the manner prescribed in the ordinance was not destroyed or affected by the 1913 act, and that when the city resorted to such remedy and repossessed itself of the lands, its title and possession were unassailable by those claiming under the unfulfilled contracts of sale. The city has not sought in this suit to recover the land upon its superior title, but the action was brought against the city to oust it of its possession and defeat its rights exercised in compliance with the contract of sale and without resort to the courts. It is true that there are circumstances under which the right to resort to the superior title may be lost, and frequently cases have arisen in

which courts of equity have denied to the vendor recovery under the superior title, where it would be inequitable to apply the harsh remedy of rescission without making some fair adjustment with the purchaser. No such case, however, is presented here. The lands were bought more than 26 years before the city exercised its right of forfeiture. Only 10 per cent. of the purchase money was paid. The purchaser and his vendees had never exercised any right of ownership over the property further than may be inferred from the court's finding that some city taxes may have been paid prior to the year 1903. The title of plaintiff is rested solely upon the original contract of sale and upon a reliance upon the efficacy of the 1913 act as destroying the city's superior title.

We conclude that the judgments of the district court and Court of Civil Appeals should be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.