GUEVARA et al. v. GUEVARA. (No. 6985.)

(Court of Civil Appeals of Texas. San Antonio. June 6, 1923. Rehearing Denied June 22, 1923.)

1. Municipal corporations ☞225(5)—City's grantee held entitled to land conveyed as against successors of original vendee, whose title was forfeited.

One to whom a city deeded land, theretofore conditionally sold and conveyed by it to another, but forfeited for nonpayment of interest on a vendor's lien note, as authorized therein and by an ordinance authorizing the sale, held entitled to the land as against persons holding under the original vendee, who had only an equity of redemption, which was terminated, thereby rescinding the contract and reinvesting the city with the legal title; purchasers from the original vendee and his successors being charged with notice of the city's rights, as shown by the ordinance, original deed, and the city's record.

2. Limitation of actions ☞16—Independent remedy created by parties to contract not affected by general statutes.

When the parties to a contract create an independent remedy for enforcement of their rights, such remedy, when timely exercised, is not affected by general statutes of limitation, which only bar the remedy to resort to the courts for relief.

3. Estoppel ☞62(4)—City, receiving taxes on land conditionally sold by it, not estopped to forfeit.

A city, receiving payment of taxes on land conditionally sold by it, is not estopped to forfeit the land for nonpayment of interest on a vendor's lien note by the purchaser, especially if such payments are voluntarily made.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by Alfonso Guevara against Arturo M. Guevara and others. Judgment for plaintiff, and certain defendants appeal. Affirmed.

See, also, 249 S. W. 525.

Mann, Neel & Mann, of Laredo, for appellants.

W. W. Winslow, of Laredo, for appellee.

COBBS, J. This suit was instituted by Alfonso Guevara against appellants Arturo M. Guevara, Rufugio Gonzalez de Castillo, Angela C. de T. Carranza, and Rafael Tyerina Carranza, and also against the city of Laredo on its warranty. It was a suit in trespass to try title, wherein appellee sought to recover from appellants the title and possession of block No. 284 in the Eastern division of the city of Laredo. In addition to the ordinary plea in trespass to try title, appellee especially pleaded that the city of Laredo was the common source of title, and that the city of Laredo on the 20th day of January, A. D. 1920, was the legal and equitable owner of said land; that on that date said city deeded same to appellee by its general warranty deed, and that prior thereto, to wit, on August 10, 1888, the city had made a conditional sale to James B. Shepherd of above block for the consideration of $130, $13 cash and a vendor's lien note for $117, due 20 years after date; that the city was the legal and equitable owner of said note; that no interest had been paid since January 1, 1896; that on December 4, 1915, the city secretary of the city of Laredo indorsed on said purchase-money note the words "Land forfeited," and made an entry to that effect in the account of sales kept by him, as provided by the ordinance under which land was sold; that by this indorsement on said note entry on said book of sales the city then and there became reinvested with the full, absolute, and perfect title to the aforesaid block of land.

The appellants, who were defendants in the court below, answered by general demurrer, general denial, plea of not guilty, especially pleading valuable improvements in good faith, and the four-year statute of limitation as to the attempted forfeiture by the city secretary by reason of said note. The court filed the following findings:

"(1) In 1767 a commission sent out by the crown of Spain established the town of Laredo on the north bank of the Rio Grande and granted it four squares of land, extending one league in each direction, north, east, south, and west from the center of the town plaza.

"(2) In 1884 the state of Texas patented to the city of Laredo the part of said four square leagues of land lying on the Texas side of the Rio Grande. The land was laid off in lots, blocks, streets, and plazas by the city.

"(3) On June 15, 1888, the city council passed an ordinance providing for the sale of certain blocks of land (including block 284 in the Eastern division, the land in controversy in this suit), fixing prices and terms of sale, and containing a provision for forfeiture and cancellation in the event of failure to make interest payments, as follows:

" 'Sec. 4. Every purchaser on time shall give his promissory note for the balance of the purchase price, which note shall be made payable to the city of Laredo, according to the terms of the purchase, secured by a vendor's lien, expressly reserved therein, and the note shall

provide that, in default of payment of any interest due thereon, the said purchaser shall thereby forfeit all rights to the land, and in the event of such default the city secretary shall endorse on said note "Land forfeited," and shall make an entry to that effect in the account of sales kept by him, and thereupon the said lands shall be forfeited to the city, without the necessity of re-entry, or judicial ascertainment, and the same may thereafter be resold by the city, in the same manner as if no sale had been made.'

"(4) Under said ordinance the city sold and conveyed said block 284 to James B. Shepherd on August 12, 1888, for the sum of $130, of which $13 was paid in cash, a vendor's lien was retained in the deed for the $117 balance of purchase price, and a promissory note given by the purchaser to the city as follows:

"'$117.00    Laredo, Texas, Aug. 10, 1888.

"'For value received, on or before twenty years after date, I promise to pay to the order of the city of Laredo the sum of one hundred and seventeen dollars, with interest at the rate of 8 per cent. per annum from date hereof until paid, interest payable on January 1st and July 1st each year. Both interest and principal payable at the mayor's office, in the city of Laredo, Texas. This note is given in part payment of the purchase money for block No. two hundred and eighty-four (284) in the Eastern division of said city, fronting north one hundred varas on Gustavus street, east one hundred varas on Lexington street, south one hundred varas on Musser street, and west one hundred varas on Maryland street, and containing eight lots, numbered from one (1) to eight (8), this day sold to me by the city of Laredo, and for the payment hereof together, with the interest due, according to the legal tenor and effect hereof, a vendor's lien on said property is hereby acknowledged; and in case of nonpayment of the principal or any interest accrued at the time the same is payable, then the owner or holder hereof may have the said lands forfeited according to the ordinance in such case provided.    J. B. Shepherd.'

"(5) No payments of interests or principal were ever made on said note, except the interest up to January 1, 1896.

"(6) December 4, 1915, the city secretary wrote on the back of said note for $117: 'Land forfeited Dec. 4, 1915. A. V. Woodman, City Secretary.' And in the book of accounts of land sales, at the record of this sale, he wrote: 'Dec. 4, 1915. Canceled as per resolution of C. C.'

"(7) James B. Shepherd conveyed said block of land in 1889 to James Raley for an expressed consideration of $250, subject to the city's vendor's lien.

"(8) James Raley quitclaimed the land April 10, 1915, to T. A. Bunn for $1.

"(9) July 10, 1915, T. A. Bunn deeded the land to Jose Evarista and Refugio Gonzalez for an expressed consideration of $125.

"(10) March 14, 1922, Jose Gonzalez conveyed an undivided one-third of the land to Benito Cantu and wife, Evarista G. Cantu, for an expressed consideration of $100.

"(11) March 17, 1922, Benito Cantu and wife, Evarista G. Cantu, conveyed an undivided two-thirds of the land to Arturo M. Guevara.

"(12) For a period of about six years one Juan Mata raised crops of corn and beans on this block and other blocks adjoining, with the permission of the city. This period began in 1922, or shortly thereafter, and ended when he voluntarily ceased cultivation because the city began to sell off lots and blocks, and he did not want to get into any difficulties. During the latter part of Mata's use of the land, Benito Cantu, who lived in the vicinity, told him that he could use it.

"(13) This block 284, among others, was placed on the market for sale by the city of Laredo under an ordinance passed December 9, 1916, for the sale of lands forfeited to the city, and on January 29, 1920, the same was sold and conveyed by warranty deed by the city to plaintiff Alfonso Guevara, together with another block, for $200, of which $50 was paid in cash and a vendor's lien note given for the remainder, $150. On June 23, 1922, plaintiff paid the note and the city released the vendor's lien.

"(14) City taxes on the land for 1889, 1890, and 1891 were paid by Manes Raley. T. A. Bunn redeemed for the delinquent city taxes for 1892 to 1914. No city taxes were paid for the years 1915 to 1920. Alfonso Guevara paid the city taxes for 1921.

"(15) When plaintiff Alfonso Guevara received his deed from the city, the city engineer took him to the land and staked and showed him the four corners. Plaintiff then set a cedar fence post in the ground at each corner. The land was open and brushy and unoccupied. He arranged with a man to clear and fence it, but owing to other causes the man never did anything to it.

"(16) In March, 1922, the defendant Arturo M. Guevara bought a house for $130, and moved it on the land, and took possession, and remains in possession of the land which had all been fenced in February, 1922, by defendants from whom defendant Arturo M. Guevara purchased. He had no actual knowledge of plaintiff Alfonso Guevara's claim when he took possession. All the deeds mentioned in these findings were duly recorded shortly after their dates.

"(17) The block of land is now worth $1,000.

"Conclusions of Law.

"(1) When the city secretary indorsed the note of James B. Shepherd 'Land forfeited,' and entered the cancellation of the sale, such title to the land as the city had given ceased to be in Shepherd or his assigns and reverted to the city, as provided in the ordinance which authorized the sale to Shepherd. It was no longer in effect as a deed of conveyance.

"(2) Plaintiff having proved title in himself from the sovereignty of the soil, and defendants having no title whatever, the benefits of the limitation laws of 1913 are not available to them. Actual possession by plaintiff was not necessary to maintain his title.

"Judgment for the title and possession of the land should be entered for plaintiff.

"To all of which findings of facts and conclusions of law the defendants then and there in open court duly excepted."

It will be observed, substantially, that all the questions practically presented in this

case have been considered, passed upon, and decided by this court and the Commission of Appeals in the case of Bunn v. City of Laredo, 208 S. W. 675, in which a writ of error was granted and the judgment of this court affirmed, as reported in 245 S. W. 426.

[1] When the city conveyed the title to Shepherd, it reserved the express lien, leaving the superior title in the city. As a part of that contract the right was reserved in it, upon default in payment, to forfeit the title, and to repossess itself of the land. The city followed that course. Long prior to appellant's purchase, the property was vacant, and by virtue of the forfeit the constructive possession was drawn to the city; it having the legal title, all equitable rights of the vendee forfeited, and the only adverse possession to the city was a possession taken by appellees some eight months prior to the suit.

In respect to appellants' title, we must construe it as though the controversy were between the city, as the vendor, and appellant, the vendee, laying out of sight all statutes of limitation. Shepherd's rights were fixed by the city's deed to him and the ordinances authorizing the sale, and providing the definite, sole, and specific manner and way by which to terminate the contract of sale, because, the deed being executory and itself providing how the city could reinvest itself with the possession and title, that recital passed on down through Shepherd and his remote vendees to the end. It was, so to speak, a covenant that ran with the land. If the right to forfeit and reinvest the city of Laredo with the title was as provided for, and could be done in the manner it was done, without notice to the vendee or those holding under him, as such seems to be the holding in the Case of Bunn, supra, there is nothing left for discussion or discretion to us here.

There could be no presumption of fact here to rely upon that the purchase money had been paid, for per contra the notes were in existence showing nonpayment. A prudent man, buying land when the muniments of title as here show an outstanding lien, ordinarily would require a release of the lien and the delivery of the purchase-money notes. No question of lapse of time and death of parties arises here, calling for presumption as in cases where no inquiry from any source could be made to establish the facts. But, on the contrary, here was the city of Laredo in possession of all the evidence, where the records of the transaction were carefully preserved, by the payee of the note, in whose lawful keeping and possession they were, it was the proper place for inquiry.

[2] There was also the written record of the instrument, showing the right to rescind by simply declaring a forfeiture by having the city secretary indorse on the purchase-money note outstanding and unpaid the words "Land forfeited," to quiet title, and when that was done, as it was here, then ipso facto, the equities of the purchaser, whatever they were, to pay off the notes and acquire the title, terminated and ended, and, without any other act, it rescinded the contract and passed to the city and reinvested it with the legal title. The vendee agreed upon this method of procedure, and those holding under him were bound thereby. He had before the forfeiture only the right of equity of redemption; that is, to pay off the lien and acquire the absolute title, nothing else. Such statutes of limitation as appellant contends for as controlling the rights of the parties only bars the remedy to resort to the courts for relief, but when parties themselves have created, by contract, an independant remedy, that remedy, when timely exercised, is not affected by the general law of limitation statutes covering general contracts.

[3] The fact that the city received payment of some taxes on the land will not raise an estoppel especially if such payments are voluntarily made. Any way the land was forfeited in 1915, and no taxes were paid until appellee paid the same for 1921, he having purchased the same in 1920. Regarding the Case of Bunn, supra, as practically on all fours with the facts in this case, certainly with the questions of law presented, with propriety we could almost say the questions herein presented are moot.

For the reasons given herein, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellant has presented a very interesting and able argument in behalf of the motion. So was the brief a strong and able presentation of his theory, but we thought then and still think the disposition of this case is controlled by the case of Bunn v. City of Laredo (Tex. Com. App.) 245 S. W. 426.

In referring to the reserved right in the city to forfeit the title in case of default, we did not mean to say that it was all expressed and written out in the deed, but that the ordinance of June 15, 1888, of the city of Laredo (see paragraphs 3 and 4 of the trial court's findings), being the basis of the title, should be looked to and considered contemporaneously as a part of the contract the same as though written out at length therein, and hence we have so treated it. This right of forfeiture was a part of the executory contract for sale of the property. Any one purchasing that property with the obvious reservation of the legal title in the deed, showing an unpaid, outstanding, unreleased purchase-money note, was charged with notice of the ordinance by which the sale was made and the rights of the city, the vendor. No presumption of payment would arise here, because the city of Laredo and its

records were so accessible and convenient, it was the first place to which the purchaser was charged with notice to inquire and look to; and under such facts, with the written records in existence, the purchaser was guilty of lack of ordinary care and negligence in failing to investigate, and therefore fails to show such a standing that a presumption of payment may be indulged in, or that a court of equity should be called upon to give relief.

The motion is overruled.