**SCALES et al. v. WARREN (AMERICAN NAT. INS. CO., Intervener).**

(No. 8879.)

Court of Civil Appeals of Texas. Galveston. Feb. 10, 1927.

Rehearing Denied March 10, 1927.

**I. Vendor and purchaser ⬚⟲85—Oral proof of rescission of land sale must be clear and convincing.**

Oral proof of rescission of land sale by parties thereto must be clear and convincing.

**2. Vendor and purchaser ⬚⟲85—Purchaser's assumption of mortgage and issuance of note held not to divest vendor's title, precluding rescission.**

Assumption by purchaser of land of debt to mortgagee and issuance of new note to mortgagee therefor, under agreement with vendor, *held*, under facts, not to have divested vendor's title, precluding vendor from thereafter rescinding contract of sale with purchaser; all instruments executed subsequent to original purchase expressly perpetuating vendor's lien for original purchase price.

**3. Partnership ⬚⟲55—Evidence, in suit for rent, held not to sustain finding of partnership of defendant tenants.**

Evidence, in suit for rent of agricultural lands, *held* not to sustain finding of partnership of defendant tenants.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Suit by John B. Warren against J. H. Scales and others in which the American National Insurance Company intervened. From the judgment rendered the named defendant and defendants Curtis Mowery and Gordon-Sewall & Co., Inc., appeal. Reversed and rendered as to defendant Curtis Mowery; otherwise affirmed.

Boyles, Brown & Scott, of Houston, for appellants.

C. W. Nugent, of Galveston, and John B. Warren, of Houston, for appellee.

GRAVES, J. This suit was instituted March 5, 1924, by the appellee, John B. Warren, in the district court of Harris county, Tex., against the defendants J. H. Scales, Curtis Mowery, and Gordon-Sewall & Co., Inc., the plaintiff seeking recovery and foreclosure against Scales alone on alleged vendor's lien purchase-money notes against 490.-74 acres of land in the E. R. Bradley league in Brazoria county, with alternative plea for the land itself, and against all three of the defendants for the value of certain rent crops alleged to have been raised on the land in 1924. The suit as thus instituted was severed, and thereafter, by an amended petition, the appellee, Warren, sued the defendant J. H. Scales in trespass to try title to recover of him the 490.74 acres of land. Judgment was rendered in favor of the appellee, Warren, for the land on the 26th day of February, 1925. This suit was then prosecuted by an amended petition against the defendants J. H. Scales, Curtis Mowery, and Gordon-Sewall & Co., Inc., under the No. 114083–A, and involved the alleged rents alone.

The American National Insurance Company intervened in the cause and asked to be permitted to recover herein as against all parties by reason of a declared upon assignment of the rent cotton upon the 490.74 acres of land made by the appellee, Warren, which it averred had been given it as additional security to other liens it held upon the land at the instance and request of the defendants Scales and Mowery, wherein the said appellee, Warren, expressly subrogated his landlord's lien to the American National Insurance Company.

The, plaintiff thus pressed the severed action against the three named defendants to recover of them the value of the rents upon the 490.74 acres.

The trial was had before the court without a jury, and judgment was rendered that the appellee, Warren, recover of all the defendants $1,233.36; that he further recover against J. H. Scales and Curtis Mowery the sum of $975.56; and that the intervener, with the consent of the plaintiff, be allowed to participate in such recovery to the amount of $1,695.66. The defendants requested the filing of conclusions of fact and law, which was done.

The case is here now before this court upon the appeal of the defendants J. H. Scales,

---

Curtis Mowery, and Gordon-Sewall & Co., Inc. The appellee and intervener also file and incorporate in their brief a cross-assignment of error, complaining that the judgment in the trial court should have been against all of the defendants for the sum of $2,208.92, with interest thereon from date of the judgment, to wit, July 1, 1925.

Appellants assail the judgment on 7 main grounds, the substance of which may be stated in this way:

(1) Since the consideration for the sale of the 490.74 acres by Warren to Scales was the assumption by the latter of part of a debt the former owed thereon—along with other lands—to the insurance company, which assumption the insurance company accepted, a liability on Scales' part direct to the insurance company was thereby created, and Warren was thereafter precluded from rescinding his contract of sale of the land with Scales.

(2) Scales acquired such a vested interest in the 490.74 acres deeded to him by Warren as could only be divested out of him by an instrument in writing, as a result of the insurance company's having accepted a new note and lien thereon for $8,300 from him, which note Warren indorsed, such transaction having amounted to a payment of Warren's original debt upon that tract and given rise to a new liability from Scales to the insurance company on account thereof.

(3) The evidence was insufficient to support the trial court's finding that there had been, early in 1924, an oral rescission between them of the sale by Warren to Scales of the 490.74 acres, and hence appellees were not entitled to judgment against appellants as for conversion of the rentals on the land for that year.

(4) There was no proof that appellant Mowery was a partner of Scales in renting this tract for 1924, therefore the recovery against Mowery was unauthorized.

(5) A statutory landlord's lien upon crops attaches only to the property itself, and not to the proceeds arising from its sale.

(6) Over 30 days elapsed after the removal of the crops here involved from the rented premises before appellee, Warren, took any action, by filing this suit or otherwise, to enforce his claimed landlord's lien thereon, wherefore the alleged lien had expired.

(7) The measure of damage for the conversion of the crops was their market value where raised, at the farm, and not at Houston, after their market value had been increased both by removal there and concentration in carload lots.

These contentions are made clearer by recourse to the trial court's fact findings, as follows:

"(1) On January 17, 1919, the plaintiff, John B. Warren, owned a tract of land of 1,472 acres out of the E. R. Bradley league in Brazoria county, Tex., said tract made up of three tracts of 490.7 acres each, lying on Oyster creek and on the west side thereof, a part of which was in cultivation.

"(2) On the day and date aforesaid the American National Insurance Company had a first lien and deed of trust on said tract of land to secure a note of the said John B. Warren for the sum of $20,000, due on September 12, 1921.

"(3) On said date the said John B. Warren, by his deed, conveyed to J. H. Scales 490.7 acres of land on the north side of said 1,472-acre tract, for a consideration of $17,175.90, with interest thereon at the rate of 6 per cent. per annum; by the terms of the said deed the said Scales agreed to pay the said interest annually and to pay the principal on September 12, 1921. There was no cash payment paid upon the said tract of land by Scales, but in the deed an express vendor's lien was reserved by the said Warren to secure the payment of the purchase money as set forth in the said deed, and the said Scales assumed the sum of $17,175.90 of the plaintiff's $20,000 mortgage due the American National Insurance Company and secured by a first lien upon the land conveyed by Warren to the defendant Scales, and the two other tracts of land adjoining and on the south thereof, aggregating 981.44 acres.

"(4) On the maturity of the said $20,000 note on September 12, 1921, the defendant Scales, being unable to pay the purchase money upon the said tract of land or any part thereof, nor the interest thereon, requested an extension so that the aggregate amount of the purchase money due by him should rest as a lien upon the said 490.7 acres of land.

"(5) By agreement with the said Scales the said Warren secured the consent of the American National Insurance Company to extend the loan on said land, due September 12, 1921, and to segregate it so that the land of the said Scales, amounting to 490.7 acres, should stand as security for $8,300, the said loan to mature ten years thereafter and drawing 9 per cent. interest per annum from the date of the said note. The American National Insurance Company agreed to this rearrangement and extension upon condition that the plaintiff would pay upon the note of the defendant J. H. Scales to the W. L. Moody Cotton Company the sum of $2,122.90 and all the expenses incident to the rearrangement of the said loan, and would sign the note of the said Scales for the said $8,300.

"(6) This arrangement was a mere extension of the original loan of $20,000 upon the said three tracts of land formerly owned by the said Warren, and was a mere matter of convenience as between the plaintiff, Warren, and the defendant Scales, so that the whole of the purchase money due upon the said 490.7 acres of land should rest as a lien upon the same. The amount of the purchase money due from the defendant Scales for said land, at the time of the rearrangement of the said loan and the extension thereof, was the sum of $18,445.62.

"(7) The plaintiff agreed with the defendant Scales that he would extend the amount due him as purchase money upon the said land and divide the same into four vendor's lien notes of $3,067.18 each, of date October 20, 1921, drawing 9 per cent. interest per annum from date, payable annually, due and payable, respectively, in two, three, four, and five years from date, and would pay to the said W. L. Moody Cotton Company for the defendant J. H. Scales the sum

of $2,122.90, and include the said amount in the note to be executed by defendant Scales, payable to the order of the said John B. Warren, and that he, the said Warren, would sign said note of Scales to the American National Insurance Company in the sum of $8,300. The said insurance company already had a first lien upon the said 490.7 acres of land, but, inasmuch as they were extending the original loan of $20,-000 in part, and as the said original loan was the note and the personal obligation of the said Warren, the said company required that the said Warren should execute the said $8,300 note with the defendant J. H. Scales before they would agree to segregate their lien upon the whole tract and redraft the papers so as to make the 490.7 acres of land stand for the purchase money thereof.

"(8) The defendant Scales consented to the said arrangement and executed a deed of trust upon the 490.7 acres of land and a note for $8,-300 to the American National Insurance Company, which note was executed also by the plaintiff, John B. Warren.

"(9) As a part of the same transaction, the defendant J. H. Scales executed and delivered to the said John B. Warren his promissory notes reciting that the same were vendor's lien notes and given for the original purchase money for the tract of land conveyed by the said Warren to the defendant Scales, said notes being for the sum of $3,067.18 each, and including the sum of $2,122.90 paid by the said Warren to the W. L. Moody Cotton Company on the note of the said Scales to the said company, and at the same time and a part of the same transaction said Scales executed to R. C. Conn, Jr., trustee, a deed of trust on said land to secure the payment of the said notes according to their terms, tenor, and effect, said deed of trust reciting that the said notes were purchase-money notes and a part of the original price for the said land, and by the terms of the said deed of trust the said Scales indemnified the said Warren from any liability by reason of having executed with the defendant Scales the $8,300 note to the American National Insurance Company.

"(10) All of the papers in connection with the extension of the said loan by the American National Insurance Company and the extension of the amount due the said Warren as purchase money upon said tract of land were parts of the same transaction, and evidenced the agreement made between the parties, and were all executed contemporaneously.

"(11) The effect of the said transaction was to relieve the defendant Scales of any liability on the original $20,000 loan on the whole tract, other than such part thereof as was evidenced by his $8,300 note executed to the American National Insurance Company, and was to make the 490.7 acres stand only for the purchase money agreed to be paid by the said J. H. Scales therefor, and the rights of the respective parties were not altered or changed in any respect by such extension and the segregation of the original $20,000 loan.

"(12) The defendant J. H. Scales has not paid any taxes upon the said tract of land since the rearrangement of said loan and has never paid any interest upon either the $8,300 note or the note to the said Warren, though he has obligated himself to pay the interest annually and to pay the taxes on said land before they become delinquent.

"(13) I find that two of the notes of the said Warren, dated October 20, 1921, for the sum of $3,067.18, matured on October 20, 1923, and October 20, 1924, and that by a clause in the said notes and deed of trust, executed to secure the same, the said Warren had the option of declaring all of the said notes due upon the failure to pay the interest annually, or to pay the principal of one or all of the notes when they matured.

"(14) I find that the plaintiff, Warren, has been acting as the attorney and counselor for the said J. H. Scales from the fall of 1916 until 1924, and has never charged the defendant Scales for his services in that respect.

"(15) I find that the defendant Scales had possession of the 490.7 acres of land since its purchase in January, 1919, until about January 1, 1924, and has received all of the rents and revenues therefrom, including the sum of $1,000 paid to him for an oil lease thereon in the spring of 1920.

"(16) I find that the defendant Scales became insolvent in the fall of 1920, and thereafter the plaintiff, Warren, on numerous occasions advised the defendant Scales that he would never be able to pay for said land, and that he ought to turn it back to him, and that it was not right for him to continue to use the said land and take the revenue therefrom without paying the purchase money, but the said Warren did not press the defendant, and, inasmuch as he wanted to keep the land, permitted him to do so until after the maturity of the said first note and until the defendant Scales failed to pay the interest and taxes upon the land.

"(17) I find that in the early part of January, 1924, the defendant J. H. Scales and the plaintiff, Warren, mutually rescinded the said contract of sale, and, at said time, the plaintiff, Warren, rented the said land or that part of it in cultivation, to the defendant Scales, which agreement was subsequently ratified and confirmed and agreed to by the defendant C. M. Mowery, and the said defendant agreed to pay to the plaintiff, Warren, as rent for the said cultivated land upon the said Warren's 1,472 acres, with the exception of a part thereof being cultivated by Lewis Rivera, and agreed to pay to the plaintiff, as rent, one-fourth of the cotton raised upon the said land and one-third of the corn.

"I find that the said defendants received possession of the said land from the plaintiff, as his tenants, and the said arrangement with the said defendants was a mere continuation of a rental agreement that plaintiff has had with the defendant Scales, covering his own land prior to that time and from 1917."

Findings 18 to 24, inclusive, deal with the relations between Scales, Mowery, and Warren on the one side, and the insurance company on the other, and need not be here detailed; No. 25 recites that Gordon-Sewall & Co. had knowledge of the fact that Scales was then renting the 490.7 acres from Warren under agreement to pay him one-fourth the cotton and one-third the corn, before any cotton had been gathered thereon in the fall of 1924; Nos. 26 and 27 relate to the tender of a conditional reconveyance of the land in September of 1924 back from Scales to

Warren, and the latter's refusal to accept it; No. 28 catalogues the original filing of this suit, as also its subsequent severance; the remaining findings give the details as to the crops raised upon the land in 1924, their disposition, and the apportionment of the returns therefrom among the parties found by the court to be entitled to them.

There were then appended these conclusions of law:

"(1) I find and conclude that the plaintiff, John B. Warren, as against the defendant J. H. Scales had a superior title to the tract of land of 490.7 acres, and that the contract of sale was a mere executory contract and at all times the legal title to said land was in the plaintiff, John B. Warren.

"(2) I find and conclude that there was a valid rescission of said contract of sale on or about January 1, 1924, and that the said defendants Scales and Mowery thereafter were in possession of the said cultivated land on said tract as tenants of the plaintiff, John B. Warren.

"(3) I find and conclude that the plaintiff had a landlord's lien on the cotton, corn, and seed raised upon said land until the rents were paid, and, inasmuch as the plaintiff notified the said Gordon-Sewall & Co., Inc., of his claim of the landlord's lien upon the cotton in the hands of the said Gordon-Sewall & Co., Inc., and filed his suit therefor, setting up his claim against the said Gordon-Sewall & Co., Inc., and the other defendants herein in less than 30 days of the removal of said cotton from said premises, the said plaintiff had a landlord's lien upon the said cotton taken from said land at the time of the sale thereof by Gordon-Sewall & Co., Inc., as agents and cotton factors of the defendants Scales and Mowery, on December 26, 1924; that the said landlord's lien was in full force and effect at the time of the sale of said cotton.

"(4) I find and conclude that, independent of the question as to the existence of the plaintiff's landlord's lien, inasmuch as no part of the purchase money nor interest thereon had been paid and the taxes thereon had been allowed to become delinquent by the defendant J. H. Scales, and independent of the question as to the superiority of the plaintiff's title to said land, the said plaintiff was entitled to the rents and profits from said land for the year 1924, and in law and in equity said plaintiff is entitled to recover herein as against the defendants, as shown by the decree.

"(5) I find and conclude that the intervener, American National Insurance Company, is entitled to participate in the recovery herein to the amount of $1,695.66, the same to be applied by the said insurance company on the note held by them of the plaintiff and J. H. Scales for $8,300.

"(6) I find and conclude that the defendants Gordon-Sewall & Co., Inc., are not liable herein to the plaintiff or intervener further than the sum of $1,233.36, and that plaintiff and intervener are not entitled to recover herein as against the said defendant the balance of the rents claims."

As we view the case, the learned trial court's conclusions of law correctly determined all the issues involved, except as to the liability of Curtis Mowery, and consequently none of appellants' presentments, other than the fourth, can be sustained.

The authorities they cite as upholding their contention that Warren was precluded from rescinding his contract of sale with Scales in January, 1924, while undoubtedly exemplifying correct principles of law, are inapplicable to the situation found by the trial court to have obtained here, in that the rule is there applied with reference to the unilateral or compulsory right of the vendor to rescind, and not to agreed rescissions; in other words, it might be conceded in this instance that Warren could at that time neither have accomplished this rescission alone, nor compelled Scales to make it, without undermining the holding below that it took place, because it might still have been effected by the mutual agreement between them, as the trial court found that it in fact was.

[1] So that, we think, the correctness of that holding comes down at last to the single question of whether or not the evidence was sufficient to support the quoted fact finding that rescission occurred through mutual oral agreement in January, 1924; after careful consideration of the statement of facts, we conclude that it was, notwithstanding that the proof in such instances must be clear and convincing. It would serve no necessary purpose to here attempt a résumé of the testimony on this issue, but it seems indisputable from the many facts and circumstances appearing in it that, following the occasion on which the appellee, Warren, testified the rescission was agreed upon, both parties thereafter so treated and acted upon it until disputes arose between them nearly a year later over these rents.

[2] Neither can we hold that Warren, under all the facts and circumstances here, ever lost by the various metamorphoses through which Scales' purchase-money indebtedness to him for the 490.74 acres went— all of them made by mutual agreement between himself and Scales—what may be termed the dominating title to that land, as between himself and Scales, so long as the latter had not paid him the purchase money therefor. Booty v. O'Connor (Tex. Civ. App.) 287 S. W. at page 289, par. 7.

In all the various instruments passing between them he had at all times expressly reserved and perpetuated his vendor's lien against Scales for the full amount of the latter's agreed purchase price from him—inclusive of the $8,300 of it Scales had so undertaken to pay direct to the insurance company—and had done nothing to impair it; the undisputed evidence also shows that, while holding the land all the while and enjoying returns therefrom, Scales never at any time paid a dollar of this indebtedness either to the insurance company or to War-

ren; for that reason, if no other, he never acquired any vested interest in the land, as appellants contend, despite the segregation by the insurance company of this $8,300 of his indebtedness to Warren, so as to make Scales only owe it that much thereon; he still owed the whole original amount, with accumulations, to Warren, and this segregation arrangement was shown to be a mere form for the convenience of Scales and Warren alike; not only did the insurance company require Warren to so evidence by remaining liable to it on Scales' note for the amount, but as a part of that transaction, Scales, by a new and contemporaneous deed of trust, expressly agreed with Warren that his original lien on the land should continue to secure the rest of the purchase money, as well as that represented by the $8,300 note Warren had so indorsed for him to the insurance company. In these circumstances, it being thus expressly agreed otherwise, the giving of the new note for $8,300 to the insurance company from Scales did not release Warren's lien against the latter for any part of the unpaid purchase money between them. The rule thus stated in Wilcox v. Bank, 93 Tex. page 330, 55 S. W. 317, 319, is applicable:

"Here the lien was expressly reserved in the conveyance, and in such a case we understand the authorities to hold that the taking of a new note, with sureties, in renewal of the original note for the purchase money, of itself neither releases the lien nor creates a presumption that it was intended to be discharged. * * *

"The cases just cited also recognize the doctrine that when an express lien has been reserved, the taking of a new note with additional security in place of the original note does not release the lien. A lien created by mortgage or by an express reservation exists as long as the debt exists which it secures, unless it be discharged by some valid agreement between the parties. A debt for which a new promise or obligation with a new security is given is not of necessity and by that fact alone extinguished; and hence a mortgage by which it is secured is not extinguished, unless the parties agree that the new promise is to be taken as a payment of the debt or that the new security is given in lieu of the old and in discharge of it. To our minds, it is misleading to speak of a waiver of a lien as applicable to such a case. It is not inaccurate to say that a grantor who has made a deed without reserving a lien, and has taken an independent security for the purchase money, has waived his lien, because in such a connection it is merely meant to say that he has waived his right to claim a lien. But when a lien is once created by an express agreement, the land is not to be disincumbered save by a payment of the debt or a contract for the release or discharge of the incumbrance."

Neither do we find any evidence that the insurance company ever accepted Scales and his responsibility in any degree upon this $8,300 amount in substitution for that of Warren, or of them both. On the contrary, it is undisputedly shown that it made this $8,300 loan on the 490.74 acres standing in Scales' name to both himself and Warren for their mutual convenience, and that they both accordingly joined in executing to it the note and deed of trust thereon. The testimony, as a whole, clearly shows that the only purpose in this, which plainly was a mutual and well understood one between the three parties, was to segregate and fix the standing of $8,300 of Scales' total purchase-money debt to Warren—and its accompanying lien—that his tract should, first, stand security for that amount direct to the insurance company, and, second, for the balance due to Warren.

[3] We fail to find evidence of sufficient probative force to support the trial court's finding that Mowery was a partner with Scales in renting the land during the year 1924; they both positively testified that he was not, and that his only connection with it was to furnish the hands that raised the crops for Scales thereon during that year with teams and groceries; appellee, Warren's, testimony as to his understanding with them concerning this feature does not seem to us to necessarily negative their statements about it; neither do the letters in evidence relating to the assignment of the rents indicate that the parties regarded the appellant Mowery as being interested in the assignment.

The cross-assignment may not prevail, because the trial court only found that appellee, Warren, notified Gordon-Sewall & Co. of his claimed landlord's lien upon 10 bales of the cotton raised on the 490.74 acres in 1924, of the value of $1,233.36, and brought his suit against it to enforce the same, in less than 30 days of the removal of that 10 bales from the rented premises.

It follows from these conclusions that the judgment should be reversed and the cause rendered as against Mowery, but affirmed as between all other parties; that order has accordingly been entered.

Affirmed in part; reversed and rendered in part.