**MEANS v. HAMLIN et al.**

No. 4278.

Court of Civil Appeals of Texas. El Paso.
June 10, 1943.

Rehearing Denied July 15, 1943.

Robert Ogden, of Dallas (E. G. Moseley, of Dallas, on the brief), for appellant.

Turner, Rodgers & Winn, of Dallas, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the 101st Judicial District Court of Dallas County. Suit was filed on December 1, 1939, by appellant, Mrs. Laura Means, in her capacity as administratrix of the estate of her deceased husband, N. H. Means, against appellees, S. C. Hamlin and Z. B. Hamlin, to recover $5,923.50 as the amount of principal, interest and attorney's fees due on a certain promissory note given by appellees as part of the purchase price of 80.8 acres of land known as a part of the James Howard Survey No. 43, in Dallas County, and to foreclose a vendor's lien on such land, retained in the deed conveying it to appellees to secure the payment of such note.

By her first amended petition in intervention and substitution filed January 20, 1941, on which the case went to trial, appellant sued in her individual capacity, alleging that since the suit was originally instituted the administration of the estate of N. H. Means had been closed and she was the successor in interest and owner of all

of the right and title of the estate in the subject matter of the suit. She sought to recover title and possession of the land referred to on the ground that in December, 1936, her husband, N. H. Means, the then holder of said note and lien, had at the request of appellees taken possession of the property under an oral understanding and agreement with them that the executory sale to them should be rescinded and the note cancelled, and that from this time until his death N. H. Means was the owner of the title and right to possession of the property. By alternative pleading she sought to recover $6,282.81, the amount of principal, interest and attorney's fees then due on the note, and to foreclose the lien.

Appellees answered by special exceptions, general denial, plea of not guilty, and specially pleaded the two and four years' statutes of limitation. Vernon's Ann.Civ. St. arts. 5526, 5527.

Trial was to a jury. At the close of the evidence both parties moved for an instructed verdict. The court refused both motions and submitted the case on special issues. After two days' deliberation the jury reported that they were unable to agree. The court then reconsidered appellees' motion for an instructed verdict, concluded that it should have been granted, and rendered judgment that appellant take nothing against appellees, and quieting their title and possession to the land; also denying appellant recovery on the note.

Appellant contends, first, that under her pleading and the undisputed evidence the court should have granted her motion for an instructed verdict; secondly, that the preponderance of the evidence established the oral rescission and cancellation of the note, and the court erred in entering judgment for appellees.

The land in question was the community property of Peter B. Hamlin and his wife, Loraine Hamlin, each of whom died intestate prior to November 18, 1924. They were survived by ten children, including appellees, S. C. and Z. B. Hamlin, who inherited the property. By warranty deed dated November 18, 1924, the other children conveyed to each of appellees "an equal undivided one-half right, title and interest of, in and to all of our undivided right, title and interest of, in and to" the property. The consideration was $8,726.40, $3,726.40 of which was paid in cash, and $5,000 by the execution by appellees of the note in question. This note was for the principal sum of $5,000, was dated November 18, 1924, due on or before December 1, 1929, and was payable to the order of Sam F. Means, who furnished the balance of the purchase money for immediate payment to the grantors. The deed contained the following clause: "And the said Sam F. Means having advanced and paid to grantors said sum of $5000.00 of the purchase money for the hereinafter described property, and at the request of all the parties hereto is subrogated to all the rights, equities and liens of the grantors, and in consideration of which said note, rights, equities, remedies and vendor's lien, are hereby transferred, assigned and conveyed to said Sam F. Means." It also contained the usual clause retaining a vendor's lien.

Sam F. Means died intestate on February 19, 1927, and was survived by his two brothers, Mark and N. H. Means. All his interest in the note and lien was transferred by Mark Means to N. H. Means on April 30, 1927. By endorsement thereon, signed by appellees, the note was extended so as to mature on or before December 1, 1934. N. H. Means died intestate on May 10, 1937. There was a controversy between appellant and Mark Means regarding the settlement of his estate. On August 30, 1940, Mark Means executed an instrument in which he acknowledged that appellant, as administratrix of the estate of N. H. Means, had delivered to him certain properties partitioned to him by the Probate Court of Dallas County, and recited that: "I do hereby in consideration of the delivery unto me of such peaceable possession in and to the above described properties and of such accounting, give the said Mrs. Laura Means and the sureties on her official bond as Administratrix of the estate of N. H. Means, Deceased, a full and complete release, discharge and acquittance from all and every cause of action, claim and demand against her and/or the sureties on her official bond as Administratrix of said estate and in and to any and all of the properties, real or personal, of such estate except the properties above described."

Appellant alleged in substance that in December, 1936, the dwelling house situated on the land in question burned; that appellees advised N. H. Means, who was then the owner and holder of the note and vendor's lien, that they were without funds to

rebuild it or to pay any part of the note on which there was then due $4,443, and requested N. H. Means, as the owner of the note and lien, to take possession of the property, rebuild the house and rent to them as tenants; that this was done with the understanding and agreement between N. H. Means and appellees that the note was cancelled, the sale rescinded, and that Means should from then on be the owner of the property; that appellees had occupied the property as tenants since 1937. By her alternative plea she alleged that she personally knew of the facts relating to appellees' request that her husband take possession of the property and of his taking possession thereof, and of appellees' occupancy as tenants, and acknowledgments that they so occupied the property; that appellees had concealed from her and her deceased husband their intention to repudiate their agreement and the nature of their occupancy of the property for the purpose of lulling them into inactivity; that after the death of her husband they had conceived the idea of repudiating the oral agreement of rescission for the purpose of defrauding her of the property; that she did not learn of such fraudulent scheme and could not have learned of same by the use of reasonable diligence until after December 1, 1938 (four years after the note became due), and that appellees were therefore estopped to plead the statute of limitations in bar of her action on the note. Exceptions to this alternative plea were sustained by the pre-trial court, and the trial proceeded on the action in trespass to try title alone.

The evidence on which appellant relies to raise the issue of an oral rescission is as follows: Claude Wooton, appellant's son by a former marriage, and his wife, Ruby Wooton, testified that they were at the home of N. H. Means and appellant on December 11, 1936; that on this occasion appellee S. C. Hamlin (also called "Bud" Hamlin) and Mr. Boyd (who was married to a sister of appellees), appellant and her husband, N. H. Means, were together in the room when witness and his wife arrived; that as Hamlin started to leave he and Means were "talking back and forth." He heard Hamlin say, "We'll just turn the farm back over to you and rent from you." That there was some talk regarding the house; that Means just said: "All right." Ruby Wooton's testimony was substantially the same as her husband's. How-

ever, she testified that Hamlin said to Means that "he would turn the land over to him in payment of a note he had against some land and that they would just pay rent." Claude Wooton further testified that immediately after Hamlin and Boyd had left the room Means said, "I will put that down right now," and reached up and wrote on a calendar which was hanging on the wall. Ruby Wooton also testified that she saw Means write on the calendar just after Hamlin and Boyd left. A calendar for December, 1936, was introduced in evidence and identified by the Wootons as the one on which Means wrote on the occasion, and the words, "Begin biz Hamlin farm," written in the space for the date of December 11th, were identified as the handwriting of N. H. Means. Mr. Wooton also testified that a notation on a calendar introduced in evidence under date of April 21, 1937, was in the handwriting of N. H. Means. This notation was as follows: "Onion shed this Hamlin."

Robert Ogden, one of appellant's attorneys, testified that in the early part of 1938, while representing the estate of N. H. Means, he went out to appellees' place and discussed the note with appellee Z. B. (Zeb) Hamlin, and that during the conversation this appellee admitted that the note had not been paid and told him that "if Nat (N. H.) Means had lived there would not have been any trouble because the Hamlins would have done what they told Nat (N. H.) Means they would do." It was shown that in that locality onions was one of the principal crops raised, and that landowners and tenants frequently met at a place known as the "Onion Shed" near Garland where farmers brought their onions and made arrangements to market them, and that tenants and landlords frequently met there to make arrangements with reference to the payment of rent.

Beyond a doubt the note sued on is barred by the four-year statute of limitations. One question remains: Whether or not the evidence was sufficient to raise the issue of an executed verbal rescission alleged to have occurred in December, 1936?

Plaintiff, in respect to this issue, plead substantially as follows: That during the month of December, 1936, the dwelling house situated upon the land in question burned, and as a result thereof was completely uninhabitable and beyond repair; that defendants advised N. H. Means, now

deceased, that they were without funds to rebuild the dwelling house and were without funds to pay all or any part of said vendor's lien note, on which there was then due the sum of $4,443, and desired and at such time requested the said N. H. Means to take possession of said property as the holder and owner of the vendor's lien note and vendor's lien; and requested him to build a house thereon, and that they would reoccupy the same as tenants in the future; that the said Means, during the month of December, 1936, agreed to take possession of the property and did take possession thereof, and did erect a residence house thereon at a cost in excess of $280; that during the month of January, 1937, the said N. H. Means rented said property, together with the rebuilt improvements thereon, to the defendants for the year 1937 on the usual and in accordance with the customary farm tenancy, being a division of the agricultural products produced on said land.

■ The evidence fails to show that the house referred to in plaintiff's petition burned in 1936, but rather conclusively shows that same was burned prior to that time, rebuilt by the defendants with the financial assistance of their neighbors. There is no evidence that there was any contract of tenancy between the said Means and the defendants; there is no evidence that Means, or his successors in title, was ever in possession of the land involved. The sole evidence as to a verbal rescission has been hereinbefore narrated. The two notations made on the calendar by Means in the absence of the defendants were of small probative value. Each was an ex parte hearsay declaration. If admissible at all, it was only for the purpose of explaining conduct and action on the part of plaintiff and her predecessor in title inconsistent with the claim of ownership of this property. The witness Wooton is the son of plaintiff. That the conversation took place is denied in substance by the witness Boyd. Subsequent to the alleged rescission Means listed his property for taxation. He listed a number of tracts of land, but this land was not listed. Plaintiff qualified as administratrix of his estate in June. She inventoried this note as a claim against the estate. In numerous sworn papers she at all times claimed that this note was part of the estate of her deceased husband. December 1, 1939, she filed suit on this

note against the defendants, seeking judgment thereon with a foreclosure of the lien. In this petition she plead an extension on the back of the note as follows:

"We, S. C. Hamlin and Zeb Hamlin, makers hereof, do hereby agree to the extension of the date of payment of this note so that the same shall become due and payable on or before December 1, 1936.

"S. C. Hamlin
"Zeb Hamlin."

In truth and in fact the endorsement provided that the note become due and payable December 1, 1934. It might be a reasonable deduction that the date December 1, 1936, was plead to avoid showing on the face of the pleading that the note was barred by limitation.

■ It is elementary that there may be a verbal rescission by mutual agreement of the executory contract evidenced by a deed retaining a vendor's lien.

■ The vendor holds the title in trust for the vendee. In case there is a rescission by mutual parol agreement, there is a termination of the trust as to the land by parol. In order to establish a parol trust as to land, the evidence must be clear and convincing.

Consistency requires a holding that such should be the character of the evidence to terminate a trust evidenced by writing. It has been so held. Scales v. Warren (American Natl. Ins. Co., Tex.Civ.App., 293 S.W. 238.

There is entirely lacking here any testimony of probative force that defendant Z. B. Hamlin ever authorized defendant S. C. Hamlin to make the proposition for a rescission to N. H. Means—no evidence that Z. B. Hamlin in any way acted upon or ratified such proposition. In making the last two statements above, the testimony of Judge Ogden is not lost sight of. The statement of Z. B. Hamlin, to which he testified, is regarded as too vague to constitute any evidence of ratification.

■ Giving the testimony of the witnesses Mr. and Mrs. Wooton full credence, it amounts to no more than negotiations relating to a rescission. In our opinion the rescission was never executed. There is no evidence that Means took possession of the land—that he ever claimed a right to possession of the land. The note was never surrendered. If such an executory

agreement there was of rescission, plaintiff, as administratrix of her deceased husband's estate, repudiated same by filing suit seeking to enforce the note. Plaintiff qualified as administratrix June 10, 1937. During her tenure as administratrix there is no evidence that she either collected or sought to collect rents for this property.

█ We think it is very clear that Means and defendant S. C. Hamlin could not have contemplated that the conversation constituted a rescission. Each of the Hamlins owned an undivided one-tenth interest in the property independent of the deed in which the vendor's lien was retained. It is our view that a rescission would not in any way have affected the title which was cast upon them by inheritance.

The case of Bond v. Bumpass, Tex. Civ. App., 100 S.W.2d 1047; Bumpass v. Bond, 131 Tex. 266, 114 S.W.2d 1172, has been given careful consideration. Judge Bond was allowed a foreclosure as against the defendant in that case on the theory that he had a contract lien against the interest of Mr. Bumpass. An entirely different question would have been presented had Judge Bond sought to rescind. In such case we think he would not have acquired Mr. Bumpass' undivided interest in the land. His contract lien would not have survived the cancellation of the note or notes upon which it was dependent. Here, the grantors in the deed under which defendants claim did not purport to convey any interest held by the grantees. All the deed here in question purported to convey was the interest of the grantors, which was an undivided eight-tenths interest. To vest in Means this undivided two-tenths interest in the property a conveyance from the defendants was, we think, essential.

As we understand the contention of appellant, nothing short of the vesting of the full legal title to the property was contemplated in the negotiations, if such they were, for a rescission.

█ It is our considered opinion that the evidence was insufficient to present the issue of an executed rescission. There was no error in the court withdrawing the case from the jury and instructing a verdict for the defendants.

Affirmed.

WALTHALL, J., not participating.