**FARR et al. v. MORELAND et al.**

**No. 6227.**

Court of Civil Appeals of Texas. Texarkana.

Oct. 17, 1946.

Rehearing Denied Nov. 7, 1946.

Jones & Jones, of Mineola, and J. I. Wheeler, of Texarkana, for appellants.

W. W. Harris and C. W. Vickery, both of Quitman, for appellees.

WILLIAMS, Justice.

Under a deed dated October 10, 1924, A. J. Roe, Sr., joined by Martha Roe, his wife, and the children by his first wife, conveyed to Jasper Moreland, the defendant below and appellee here, a 45-acre tract of land out of the Hagden Arnold Survey in Wood County, Texas, with general warranty of title. The total consideration given was represented by five promissory vendor's lien notes, each in the sum of $200, executed by appellee and payable to A. J. Roe, Sr., on the first day of December, 1925, 1926, 1927, 1928 and 1929, respectively. The deed stipulated that the vendor's lien was retained against the land until above notes and interest were paid, and when so paid "this deed shall become absolute." Moreland paid the first three notes, which with interest amounted to $730. The notes due in 1928 and 1929 were never renewed and never paid.

July 16, 1942, Mrs. Annie Sanders and others, the children of A. J. Roe, Sr., who died intestate in 1925, joined by Mrs. Martha Roe, his surviving widow, filed this trespass to try title action in statutory form (Rule 783, T.R.C.P.) against Jasper Moreland, to recover title and possession of above tract of land. Mrs. Martha Roe died intestate during pendency of the suit, whereupon Mrs. Martha Farr and the children of Mrs. Roe by a former marriage were granted leave to and did on May 28, 1945, intervene as plaintiffs in the suit.

Defendant urged the provisions of Article 5520, R.C.S., Vernon's Ann.Civ.St. art. 5520, as a bar to plaintiffs' and intervenors' right to maintain a trespass to try title action to recover title and possession of the land, and asserted limitation title by virtue of his possession under the provisions of the 3, 5 and 10 years' statutes of limitation, Articles 5507, 5509, and 5510, R.C.S. In their supplemental pleadings, plaintiffs and intervenors alleged that by virtue of the provisions in the deed of conveyance, the superior title was retained by and remained in grantors and their heirs until the notes were paid; that

in December, 1934, defendant being unable to pay the notes due in December, 1928 and 1929, wrote a letter to A. J. Roe, Jr., one of the plaintiffs, in which he stated he was surrendering the land, and which offer was accepted by A. J. Roe, Jr., in behalf of himself and the other heirs at law; that by reason of the offer and acceptance, the rescission of the sale of the land occurred in December, 1934, and that in fact if defendant actually resumed possession of the land thereafter, he did no act or thing to put plaintiffs on notice that he was holding or claiming said land adversely to them.

Intervenors plead that before the two notes were barred by limitation and before the years 1930 and 1934, Moreland agreed with Mrs. Roe and the heirs of A. J. Roe, Sr., partly verbal and partly written, to rescind the contract of purchase, and said sale was between said parties in all things rescinded. Pleading further, to toll the running of limitation intervenors alleged that Mrs. Martha Roe was of unsound mind on December 1, 1928, and at all times subsequent thereto until her death.

In response to the only issues submitted, the jury found that Mrs. Roe was not of unsound mind. The court refused to submit appellants' requested issues on rescission, finding as recited in the judgment that appellants failed to prove rescission of the executory sale of the land in controversy, and further found that at the time this suit was filed, the two notes due in 1928 and 1929 were barred by the statute of four years' limitation, Article 5527, R.C.S.

From a judgment which denied plaintiffs and intervenors any recovery, with all costs in favor of defendant, the intervenors only have appealed. The pleas of title by limitation asserted by defendant and the controversy in the pleadings between plaintiffs and intervenors whether the land was the separate estate of A. J. Roe, Sr., at the time of its sale will not be further noticed, as no findings were had on same and no points presented involve such matters.

■ In the trespass to try title action, plaintiffs and intervenors were not seeking a recovery on the two unpaid notes, nor were they seeking a rescission by reason of the superior title on account of unpaid notes outstanding. On the contrary, under their pleadings, briefly detailed above, they sought and could maintain this suit for title and possession under an alleged rescission of the sale theretofore allegedly consummated years prior thereto. Under such status the provisions of Article 5520, R.C.S. of 1925, supra, urged by defendant, did not operate as a bar to the right to maintain the suit. Bunn v. City of Laredo, Tex. Civ.App., 208 S.W. 675, 677; Id., Tex.Com. App., 245 S.W. 426; 43 T.J., pp. 234, 238.

The court's refusal to submit appellants' requested issues on the alleged rescission and the court's finding that the alleged rescission was not proven calls for review whether the evidence raised an issue of fact to go to the jury with respect to the alleged rescission. According to John Farr, defendant asked him in 1932 to convey a message, which he delivered to Mattie Farr, his wife and her mother (Mrs. Martha Roe), that "he (Moreland) was giving the place up"; that he couldn't pay for it and asked that the notes be returned and he would deed the place back to them"; "was ready to give it up when they brought the notes." According to A. J. Roe, Jr., he in 1930 wrote Moreland about the unpaid notes, "to pay the interest"; that "we didn't want the place, wanted him to have the place"; that in reply, Moreland wrote him, "he wasn't able to take care of the notes, or something to that effect and would be more than glad to return the place back"; that he "never did answer Mr. Moreland's letter." Mrs. Annie Sanders, who claims to have seen and read above letter from Moreland, the letter having been lost, testified that she and her brother, A. J. Roe, Jr., came up from their homes in West Texas to see Moreland, "to try to get some settlement" and did see him at the time Moreland was rebuilding the residence on the tract, which the facts show was in 1938. According to her testimony "he was building his house when we drove up"; "he refused to talk to us, just kept on hammering on the house"; "told us he knew where he stood as good as we did"; "that was the first conversation I

had with him from the time I saw that letter." According to Mrs. Mattie Farr, she read a letter written by Moreland in fall of 1933, addressed to Mrs. Martha Roe, Dallas, Texas (letter lost), in which "he said he was unable to pay for the place and was moving off the land," and that the witness answered the letter for her mother; "that she was ready to accept the land"; that at the time she answered the letter "A. J. Roe, Jr., who lived in West Texas had the notes against the land."

Defendant denied above statements or representations other than he did write a letter to A. J. Roe, Jr., in which he made a conditional offer that if they would partially reimburse him for the money he had been out and would return to him the unpaid notes, he would deed the land back, but they never did accept or return the notes. Through 1928 to 1936, both inclusive, Moreland rented and lived on other farms in the community. One Reppond, under a rental contract from Moreland, occupied and farmed the place in 1937. In 1938, Moreland moved back, at which time he rebuilt the residence and he or his son has occupied the place since, his son now living there.' It appears from the evidence that during the period involved, Moreland kept the fences up, dug several wells or pools and built some out houses. To some extent, maybe very small, Moreland pastured some of the land and made small crops through the years.

Through the years 1925 up to and including 1944, with the exceptions of 1941, defendant rendered the land for taxes each year. He currently paid the taxes with the exception of the years 1930 to 1935, both exclusive, which he paid March 1, 1937, out of the proceeds from the sale of his mule. It is without dispute that the land was never rendered for taxes or that any taxes were paid by plaintiffs or intervenors during the period. They did not and do not claim to have taken possession or did any act indicative of having taken actual or constructive possession of the place.

■ Moreland's rendition of the land for taxes and payment of same and his retention of the premises during the years involved and the absence of any affirmative act on the part of plaintiffs or intervenors to render the land for taxes or to pay any taxes on same or to exercise any control or possession of the land, actual or constructive, are insufficient to have supported a jury's finding that these parties by mutual agreement in 1934 had rescinded the sales contract. Appellants, under their testimony, as late as 1938 drove up from West Texas to see Moreland to try to get some settlement, at which time the latter was rebuilding the residence on the farm. This record is absent a single physical act on the part of plaintiffs or intervenors that comports with a rescission under a mutual agreement. "Proof of the rescission by parol, of a contract for the sale of land should be clear and convincing; and should be sufficient to prove that a rescission was intended by the parties, mere preponderance of parol evidence being insufficient, and the person trying to establish a parol rescission has the burden of proving it." 66 C.J., pp. 735, 736; Scales v. Warren, Tex.Civ.App., 293 S.W. 238; 43 T.J., p. 333; Falls v. Carpenter, 1 Dev. & B. Eq., N.C., 237, 28 Am.Dec. 593. "The remedy by rescission is not favored." Walls v. Cruse, Tex.Com.App., 235 S.W. 199, 201; 43 T.J., p. 335.

The judgment is affirmed.

### On Motion for Rehearing.

■ Our attention has been called to the testimony given by Mrs. Mattie Farr in which she relates a conversation she had with Mr. Moreland in 1942 in an effort to get a settlement shortly prior to filing suit. According to her testimony when she stated to him "he had already handed the land back and I thought that the matter had been settled, he said, well, it had at one time, but he had changed his mind." This testimony of Mrs. Farr, when considered with the alleged contents of the correspondence mentioned in the original petition, prevents the conclusion that as a matter of law a jury issue of the alleged mutual rescission had not been raised. 3 Tex.Jur., Appeal and Error, Sec. 744; 17 Tex.Jur. p. 910.

Our former affirmance of the judgment is set aside and the judgment of the lower court with respect to intervenors is reversed and the cause remanded.

Reversed and remanded.